**Alex Meggitt, OSB #174131**
P.O. Box 5248
Portland, OR 97208
Email: ameggitt@ojrc.info
Telephone: (503) 563-3354

    Attorney for Plaintiff

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF OREGON
PENDLETON DIVISION

| | |
|---|---|
| JIMAAL ROBINSON,<br><br>    Plaintiff,<br><br>vs.<br><br>OREGON DEPARTMENT OF CORRECTIONS, KEVIN JACKSON, ABRAHAM CAMPOS, and VICTOR PEREZ-CARILLO<br><br>    Defendants. | Case No. 2:23-cv-00041<br><br>COMPLAINT<br><br>Civil Rights Action (42 U.S.C. § 1983) for cruel and unusual punishment in violation of the Eighth Amendment; state law negligence claim<br><br>DEMAND FOR JURY TRIAL |

    This is a Civil Rights action stemming from Defendants' unconstitutional and unreasonable use of chemical agents in a prison unit that housed individuals who had tested positive for COVID-19 and were under quarantine. On January 11, 2021, Defendants deployed a massive amount of a form of Oleoresin Capsicum (OC) spray, a debilitating chemical agent that causes burning sensations, pain, and difficulty breathing, among other symptoms, in those exposed to it.  Defendants deployed these chemicals during six separate cell extractions in the unit, despite knowing that the chemicals affect the respiratory system and that the chemicals

COMPLAINT
Page 1 of 11

would enter nearby cells housing COVID-positive prisoners. Plaintiff Jimaal Robinson was one of the prisoners in those quarantine cells. He now brings suit for the unnecessary physical and mental pain and suffering Defendants inflicted on him in using those chemical agents and in failing provide him with means of decontamination after he was exposed to them.

## JURISDICTION AND VENUE

1. This court has jurisdiction over the subject matter of this Complaint under 42 U.S.C. § 1983, and 28 U.S.C. §§ 1331, 1343(a)(3), (4). This Court has pendent jurisdiction over plaintiff's state law negligence claim under 28 U.S.C. § 1967.

2. Venue is proper within the District of Oregon because all of the events giving rise to this claim occurred in this judicial district, and all defendants reside in this judicial district. 28 U.S.C. § 1391(b). The acts and practices alleged herein occurred in Umatilla, Umatilla County, Oregon.

## PARTIES

3. Plaintiff Jimaal Robinson is an adult who currently resides in Salem, Oregon, at the Oregon State Correctional Institution. At the time of the events described in this complaint, he is an Adult in Custody (AIC) at Two Rivers Correctional Institution (TRCI) in Umatilla, Oregon.

4. At the time of the allegations made herein, Defendant Kevin Jackson was the assistant superintendent of security at TRCI. He is an employee of the State of Oregon and the Oregon Department of Corrections. At all times alleged, Defendant Jackson was acting under color of law, and is being sued in his individual capacity.

5. At the time of the allegations made herein, Defendant Abraham Campos was a corrections sergeant at TRCI. He is an employee of the State of Oregon and the Oregon

Department of Corrections. At all times alleged, Defendant Campos was acting under color of law, and is being sued in his individual capacity.

6.  At the time of the allegations made herein, Defendant Victor Perez-Carillo was a corrections officer working at TRCI. He is an employee of the State of Oregon and the Oregon Department of Corrections. At all times alleged, Defendant Perez-Carillo was acting under color of law, and is being sued in his individual capacity.

7.  Defendant Oregon Department of Corrections (ODOC) is a department or division of the State of Oregon with the capacity to sue and be sued pursuant to the Oregon Tort Claims Act. Under *respondeat superior*, Defendant State of Oregon is liable in a state tort action for the actions or inactions of its agents.

## FACTUAL ALLEGATIONS

8.   On January 11, 2021, Mr. Robinson was held in cell 171 of the Disciplinary Segregation Unit (DSU) at TRCI. He was housed in a section of the unit reserved for AICs who had tested positive for COVID-19 and were under quarantine.

9.  Mr. Robinson is asthmatic and had two inhalers for the condition. The prison had placed him on a list of AICs at "high risk" for COVID-19. He was experiencing symptoms of COVID, including difficulty breathing.

10.  At approximately 3:00 PM, Defendant Campos authorized and led a "cell extraction" a few cells away from Mr. Robinson's. As part of the cell extraction, corrections staff sprayed a large quantity of chemical agents (either OC Spray or OC/CS chemicals) into the target cell to incapacitate and remove the AIC living in the cell.

11. Over the next one to two hours, Defendant Campos and his staff performed four to five additional cell extractions in the unit, each time using chemical agents to incapacitate the target AIC.

12. From the first cell extraction, the chemical agents used in the extractions entered Mr. Robinson's cell, spreading through the unit through the ventilation system and from the tier. Each time staff performed a cell extraction, more chemicals entered Mr. Robinson's cell.

13. Upon feeling the chemicals enter his cell, Mr. Robinson yelled onto the tier and to the officers on the cell extraction team, including Defendant Campos, that this was a quarantine unit and asked why they were using chemical agents.

14. Mr. Robinson was already experiencing difficulty breathing due to contracting COVID. Exposure to the chemical agents made his breathing painful and even more difficult. The chemicals also caused him to experience burning sensations in his eyes, nose, and chest.

15. After the multiple cell extractions and uses of chemical agents in the unit, Defendant Perez-Carillo walked the tier. Mr. Robinson waited by his door for officer Perez-Carillo to pass so he could ask him for a shower, medical attention, access to fresh air, and new clothing, among other means of decontamination, to relieve his suffering from exposure to the chemical agents. Perez-Carillo ignored Mr. Robinson whenever he called out to him.

16. ODOC policy requires officers to offer a shower and other means of decontamination to an inmate who was exposed to chemical agents as soon as possible after the situation is under control.

17. Throughout the day, Mr. Robinson pressed an intercom button in his cell to contact corrections staff to ask for a shower and other means of decontamination. No one responded to him.

18. Mr. Robinson experienced the effects of the chemical agents, particularly difficulty and pain in breathing, throughout January 11, over night, and part of the next day.

19. Mr. Robinson did not receive a shower that day. He did not receive a shower until his next regularly scheduled shower, which he estimates was two days after his first exposure to the chemical agents.

20. Each of the named individual defendants was aware of the painful effects of OC spray and similar chemical agents used during cell extractions. Each was aware that the unit housed AICs who had tested positive for COVID-19, and they were aware that COVID-19 is a disease that attacks the respiratory system. Each was aware that there are options besides chemicals agents that staff can use to extract a prisoner from a cell, such as electronic shields or tasers. Each had the ability to provide Mr. Robinson with a shower or to move him to a cell that the chemicals agents used during the cell extractions would not reach.

**Supervisor Liability Allegations**

21. Defendant Jackson is liable for the actions of the above-named Defendants in a supervisory capacity.  At all times, Defendant Jackson was aware of the pain and suffering that inmates experience when denied the opportunity to decontaminate after exposure to the chemical agents.  For at least 12 months prior to this incident, Defendant Jackson was aware of previous complaints from inmates who were denied the opportunity to decontaminate after exposure to chemical agents. He was also aware of the harsh respiratory effects of these chemical agents on

those exposed to it, and he was aware that the DSU contained AICs who were being quarantined because they had tested positive for COVID-19.

22.     Defendant Jackson's responsibilities during the incident described in this Complaint included but were not limited to training and supervising TRCI security staff. These responsibilities including training and supervising security staff regarding appropriate use of force against prisoners and providing appropriate and necessary means of decontamination to inmates exposed to chemical agents.

23.     Defendant Jackson failed to train and supervise TRCI staff to provide necessary decontamination to inmates who had been exposed to OC spray, particularly those in the COVID-19 quarantine cells. He did not train or otherwise require TRCI DSU staff to avoid using chemical agents that attack the respiratory system in a unit that housed AICs who had tested positive for COVID-19 and were under quarantine.

## CLAIMS FOR RELIEF

24.     Plaintiff brings claims under 42 USC § 1983, for violations made by the named Defendants, of Mr. Robinson's Eighth Amendment rights to be free from cruel or unusual punishment. He also brings state negligence and intentional infliction of emotional distress claims against the Oregon Department of Corrections.

25.     The Defendants are all persons within the meaning of 42 U.S.C. § 1983.

26.     Plaintiff seeks an award of economic damages, non-economic damages, punitive damages where appropriate, attorney fees and litigation expenses/costs against defendants.

//

//

//

## CLAIM 1: VIOLATION OF CIVIL RIGHTS [42 U.S.C. § 1983]
### EIGHTH AMENDMENT
### (Deliberate Indifference to Medical Needs— Individual Liability)

27. Mr. Robinson restates and incorporates here the allegations in all preceding paragraphs.

28. Under the Eighth Amendment, a convicted prisoner has the right to be free from "cruel and unusual punishments." A "cruel and unusual punishment" includes deliberate indifference to a prisoner's serious medical needs.

29. Defendants were well aware of the pain, anxiety, and respiratory distress suffered by inmates who are exposed to OC spray or similar chemical agents. They were aware that the unit where they used the chemical agents housed people who had tested positive for COVID-19, and they were aware that COVID-19 is a disease that attacks the respiratory system

30. Defendants Campos and Perez-Carillo were deliberately indifferent to Mr. Robinson's serious medical needs in failing to provide Mr. Robinson with fresh air, means to clean his cell, a shower, new clothing, or other means of decontamination at the earliest available opportunity, or at all, knowing that he was exposed to chemical agents, in pain, and was in an area of the unit reserved for AICs who had tested positive for COVID-19 and were under quarantine.

31. Defendant Jackson was deliberately indifferent to Mr. Robinson's serious medical needs in failing to adequately train, discipline, control, and supervise TRCI staff regarding the use of OC spray, including proper decontamination methods, knowing that the chemical agents used during a cell extraction caused feelings of respiratory distress and that the unit housed AICs who had tested positive for COVID-19 and were under quarantine.

//

## CLAIM 2: VIOLATION OF CIVIL RIGHTS [42 U.S.C. § 1983]
### EIGHTH AMENDMENT
(Excessive Force— Individual Liability)

32. Mr. Robinson restates and incorporates here the allegations in all preceding paragraphs.

33. Under the Eighth Amendment, a convicted prisoner has the right to be free from "cruel and unusual punishments." A "cruel and unusual punishment" includes excessive force.

34. Defendants were well aware of the pain, anxiety, and respiratory distress suffered by inmates who are exposed to OC spray or similar chemical agents, and that they were using those chemical agents in an area where inmates who had tested positive for COVID-19 were housed.

35. Defendant Campos's used or authorized excessive and unnecessary force under these circumstances. Mr. Robinson was harmed by the chemicals staff deployed during multiple uses of force, though he was not the target of that force and had done nothing to deserve having that force inflicted on him.

36. In using or authorizing the use of chemicals agents while performing the cell extractions on January 11, Defendant Campos acted maliciously and sadistically for the purpose of causing harm, and not in a good faith effort to maintain or restore discipline. He did not have to use chemical agents during the cell extractions, and he was aware that the chemical agents would spread to other cells, including the cells of those who were in quarantine for testing positive for COVID-19.

37. Defendant Campos's acts, described above, caused harm to Mr. Robinson.

38. Defendant Jackson is liable in his supervisory for the excessive force that harmed Mr. Robinson, as he supervised the actions of DSU staff but knowingly refused to terminate their

use of chemical agents during cell extractions even as the unit housed people who had tested positive for COVID-19.

### CLAIM 3: STATE TORT CLAIM
(Negligence – Against Oregon Department of Corrections)

35.    Mr. Robinson restates and incorporates here the allegations in all preceding paragraphs.

36.    Defendant Oregon Department of Corrections, acting by and through its employees and agents, was negligent in one or more of the following ways:

a. In failing to exercise reasonable care to protect those in its custody, including Mr. Robinson, from the unreasonable risk of harm of using chemical agents during a cell extraction near a unit of AICs who had tested positive for COVID-19 without taking precautions to ensure those chemical agents did not enter neighboring cells; and

b. In unreasonably ignoring its own responsibilities and regulations by failing to provide Mr. Robinson with a shower, new clothing, the ability to clean his cell, fresh air, or other means of decontamination after defendant's employees exposed him to chemical agents.

37.    As the corrections agency holding Mr. Robinson in custody, Defendant had a special relationship with Mr. Robinson and owed him a heightened duty of care. This duty included protecting him from foreseeable harms arising in TRCI.

38.    Defendant's agents and employees knew or should have known that their acts or omissions would result in a foreseeable risk of harm and suffering to Mr. Robinson. Because of this foreseeable risk, Defendant owed Mr. Robinson the reasonable care and duty of not exposing him to such harm.

39. Defendant's agents' and employees' conduct was unreasonable in light of the risk of harm to Mr. Robinson and resulted in the aforementioned harm.

40. As a direct result of the actions and omissions of Defendant ODOC, Mr. Robinson experienced pain, suffering, emotional distress. Mr. Robinson is entitled to compensatory and pecuniary damages in an amount to be determined at trial.

41. Notice as required by the Oregon Tort Claims Act was provided to defendant ODOC within the statutorily prescribed time frame.

## CLAIM 4: STATE TORT CLAIM
### (Intentional Infliction of Emotional Distress – Against Oregon Department of Corrections)

42. Mr. Robinson restates and incorporates here the allegations in all preceding paragraphs.

43. In exposing Mr. Robinson to chemical agents and ignoring his requests for help for relief from the pain and difficulty breathing he was experiencing, Defendant Oregon Department of Corrections (ODOC)'s employees, including Defendants Campos and Perez-Carillo, intended to inflict severe mental or emotional distress on Mr. Robinson; or that distress was substantially certain to result from their conduct;

44. As a direct result of the above-described actions of Defendant ODOC and its employees, Mr. Robinson experienced severe emotional distress.

45. The actions of Defendant ODOC and its employees, in exposing Mr. Robinson to chemical agents and refusing to provide relief to him when he was entirely subject to their custody and care, were an extraordinary transgression of the bounds of socially tolerable conduct.

46. Mr. Robinson is entitled to compensatory and pecuniary damages in an amount to be determined at trial.

47. Notice as required by the Oregon Tort Claims Act was provided to defendant ODOC within the statutorily prescribed time frame.

### DEMAND FOR JURY TRIAL

48. For all claims alleged in this Complaint, Plaintiff demands a jury trial.

### REASONABLE ATTORNEY'S FEES AND COSTS

49. 42 U.S.C. § 1988(b) allows "the prevailing party… a reasonable attorney's fee as part of the costs…" in an action brought under 42 U.S.C. § 1983.

50. Plaintiff requests that the Court grant a reasonable attorney's fee in this action.

### CONCLUSION

WHEREFORE, plaintiff prays for relief as follows:

a. For judgment in favor of Mr. Robinson against Defendants for his economic and non-economic damages;

b. For reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988; and

c. For such other and further relief as may appear just and appropriate.

DATED: January 11, 2023.

*/s/ Alex Meggitt*
Alex Meggitt, OSB #174131
P.O. Box 5248
Portland, OR 97208

Attorney for Plaintiff